JERRY J. SULLIVAN, individually and JERRY J. SULLIVAN, as Administrator of the Estate of SENIA MORGAN, deceased, v. VIRGINIA GIVENS.

20 So. (2nd) 493 January 16, 1945

January Term, 1945
Division B

446

*Jerry J. Sullivan,* in pro. per. for appellants.

*Coe & Eggert,* for appellee.

*Albert R. Caro,* for intervenor.

**BROWN, J.:**

The appellee, Virginia Givens, plaintiff in the court below, filed a bill of complaint against the appellant, Jerry J. Sullivan, individually and as administrator of the estate of Senia Morgan, deceased, in the Circuit Court of Escambia County.

The case made by the allegations of the bill is briefly as follows: Senia Morgan, at the time of her death, in August 1942, was the owner of two lots in the City of Pensacola. Plaintiff was "the informally adopted foster child" of Senia Morgan and it was the expressed desire of Senia Morgan that plaintiff should own the property after her death. Upon the death of Senia Morgan, one Louis Rich, who, plaintiff alleged she was informed and believed was the sole heir, executed to plaintiff a deed to the property, which she had recorded. Plaintiff was informed that her title was questionable and

she employed the counsel who represented her in this suit to obtain a foreclosure of municipal tax liens on the property to perfect her title, but being unable to finance such foreclosure, and having come in contact with the defendant, an attorney at law practicing law in Pensacola, who informed her that the property could be more economically obtained by other means, she ceased to attempt to obtain a foreclosure of the municipal tax liens, and upon the advice of the defendant joined with Louis Rich in a petition to the County Judge's Court of Escambia County to cause the defendant to be appointed administrator of the estate of Senia Morgan. Such appointment was made in October, 1942. Thereafter, upon the advice of the defendant that she could obtain a tax deed to the property by so doing, the plaintiff deposited with the clerk of the Circuit Court of Escambia County the sum of $135.00 to obtain such deed. That theretofore and thereafter she and her husband had paid to the defendant a total of $28.00 to represent their interests in connection with the acquisition of the said property, but that the defendant, not regarding his duty in their behalf, caused the tax deed to issue, not to the plaintiff, but in his own name as administrator of the estate of Senia Morgan, deceased, using therefor the $135.00 furnished by the plaintiff. A copy of the deed was attached to the bill as Exhibit A, but instead of a tax deed it was a deed from the trustees of the Internal Improvement Fund of the State of Florida, dated February 3, 1943. Thereafter defendant informed plaintiff that she had gotten her money's worth out of her permitted occupancy of the property, and that he had discovered the existence of other heirs of Senia Morgan and that, acting for them, he would sell her the said property for a reasonable price to be paid by her to the said estate. Becoming convinced that defendant was not acting in her interest, plaintiff returned to her present counsel and made demand upon the defendant for the conveyance to her of the title he had received by virtue of the tax deed, informing him that he was trustee for her as to such title, but the defendant refused to recognize his obligation as such trustee and refused to make the conveyance requested. The prayer of the bill was that the court adjudge

and decree that the defendant held title to the property in trust for plaintiff, and require him to convey the same to plaintiff.

The defendant filed a motion to dismiss the bill of complaint upon several grounds, one of which was that the bill showed that the plaintiff was seeking to obtain a title to the property and to deprive the legal heirs of the estate of Senia Morgan of their interest therein. Also, that the property is shown to be held by an officer of the probate court and subject to the jurisdiction of such court. And a further ground is that complainant participated in the application for the appointment of an administrator of the estate of Senia Morgan and is estopped from complaining of such appointment and the acts of the defendant as administrator.

The defendant also filed an answer, wherein, among other things, defendant denied that Louis Rich was an heir of the property and denied that his deed conveyed any interest. The defendant also denied that he advised the complainant that the property could be more economically obtained by other means, and that she could obtain a tax deed to the property by depositing with the clerk of the circuit court the sum of $135.00. Further answering the defendant says that the facts were that the complainant approached the defendant for the purpose of borrowing money with which to acquire said property, as she had no title to it, and that defendant advised her that the estate of Senia Morgan should be administered upon by the county judge's court, and that the administrator should pay the debts and funeral expenses of the deceased and that the property should be sold, and that an administrator would have to furnish bond in the sum of $1000.00 or more. Complainant asked the defendant to become administrator as complainant could not furnish the necessary bond. Defendant agreed to administer upon the estate of Senia Morgan and to sell the property as administrator for a reasonable sum to be approved by the probate judge. In accordance with this agreement, complainant and Louis Rich, who was supposed to have an interest in the property, joined in a request to the county judge to appoint the defendant as administrator and that defendant was so appointed and was required to furnish

bond in the sum of $1000.00 which he did with a surety company and that his appointment was made on October 2, 1942. As administrator, defendant had the property appraised by two well known real estate dealers, who valued the property at $1200.00, a copy of which appraisement was filed in the county judge's court, and a copy attached to the answer. The property was advertised for sale by the trustees of the Internal Improvement Fund on January 16, 1943, at 10 A.M., a copy of notice being attached to the answer. At that hour, the defendant, in compliance with his duty as administrator of the estate, and to protect the estate, appeared at the office of the clerk of the circuit Court in Pensacola with necessary funds to pay off or bid in the property, and to his surprise he found the plaintiff there, and that she had deposited with the clerk $135.00 to bid in the property. Defendant advised the plaintiff that he would pay off this indebtedness, but that inasmuch as the plaintiff was occupying the property and expected to buy the same from the administrator, the defendant as administrator agreed with plaintiff that the deed should be made to the defendant as administrator and that the amount which had been deposited with the clerk would be used and that she would be given credit for the amount so deposited. Plaintiff and defendant then directed the clerk how to make the deed and the clerk in accordance with such instruction issued the deed to the defendant as administrator. Thereafter plaintiff called at defendant's office several times and was told to submit a bid for the property in accordance with the understanding, and plaintiff promised to submit a proposal to purchase, but that she never did so, and hence this suit. The answer also alleges that plaintiff has occupied the property since defendant's appointment as administrator for a period of twenty months and that the reasonable rental value was $14.00 per month, a total of $280.00 and that he had credited her debt for rent with the $135.00 above referred to.

In his answer the defendant also denied that he had acted as trustee for the complainant and alleged that when he became administrator of the estate, which was at the request of

450

the plaintiff, he became obligated to protect the interest of the estate and the heirs of said estate (Sec. 732.59, F.S.A. 1941), and to account to the probate court of Escambia County for the property so appraised and inventoried or the value thereof, and that to allow the complainant to acquire $1200.00 worth of property for the sum of $135.00 would be a great injustice to the heirs of said estate.

In an amendment to the answer which was permitted by the court, the defendant alleged that if he ever acted as attorney for the plaintiff, that relation as attorney and client ceased to exist when he became administrator of the estate of Senia Morgan, as the interest of the estate and those of the plaintiff came in conflict. That such relationship was as follows: that defendant was employed by one John Whittington to examine the papers and the security in the event Whittington loaned the plaintiff the money to purchase the property in the event she purchased it at City tax foreclosure sale; that plaintiff came to see him for the same purpose, evidently sent by Whittington, and that defendant told her that the estate should be administered upon so that the debts could be paid and the heirs settled with and that an administrator could sell her the property. Whittington declined to loan the money and defendant was appointed administrator as above alleged.

Just before the entry of the final decree, Emily Bryant, one of the appellants here filed a petition in the cause to intervene, the petition being verified and having attached thereto the proposed answer of the intervenor, and the attorney for plaintiff agreed to acceptance of notice and disposition before the court of application to intervene. In this application, Emily Bryant alleged that she was the mother of Louis Rich, who claims to be the sole heir of Senia Morgan, and that she is the daughter of Senia Morgan and an heir at law, and as such is entitled to an undivided one half interest in the property, and that the other half interest is divided among numerous heirs, some unknown to petitioner, but that petitioner is the main heir at law and has a legal interest in the property involved in the suit. In the answer of the intervenor, which was tendered, she denied that plaintiff was ever

an informally adopted child and also denied that Louis Rich was ever an heir to the property or had any rights whatsoever therein. She also alleged that the plaintiff had no right whatsoever in the property. She also alleges that there was a conspiracy between the plaintiff and the defendant as administrator to allow the plaintiff to secure the property of the estate without paying fair value for the same, which property the plaintiff had occupied for two years without paying rent. The chancellor entered an order denying the application to intervene but without prejudice to the right of the petitioner to seek any other appropriate remedy for protecting her rights.

On the same day the court rendered a final decree on hearing upon bill and answer as amended and held the equities to be with the plaintiff; that the defendant, Sullivan, had acquired the title to the property involved herein as the attorney for and representative of the plaintiff, and ordered that the defendant Sullivan, as administrator of Senia Morgan's estate, execute to her a good and sufficient conveyance, conveying all right, title and interest acquired by him under and by virtue of the tax deed made by the Trustees of the Internal Improvement Fund to defendant Sullivan as administrator.

From this decree defendant Sullivan, individually and as administrator, and also Emily Bryant, the petitioner for intervention, each took their separate appeals to this Court.

In the case of Miami Bridge Company v. Miami Beach Ry. Co., 152 Fla. 458, 12 So. (2nd) 438, we held that under Section 40 of the 1931 Chancery Act, a motion for decree on bill and answer should not be sustained where the answer sufficiently denies essential allegations of the bill or states a defense in avoidance. Applying this rule to the case at bar, we hold that the court below was in error in granting the decree above referred to in favor of the plaintiff below.

This holding makes it unnecessary for us to determine whether or not the court erred in denying the motion to dismiss the bill. Nor do we think it necessary to determine whether or not the court erred in denying the petition for

intervention. If the defendant Sullivan can prove the essential facts alleged in his answer and amendment thereto, the bill should be dismissed, and the petitioner for intervention, who claims to be an heir of the estate, can then obtain protection of any rights she may have in the estate of Senia Morgan, as an heir or distributee of said estate, in the administration proceedings in the county judge's court. The chancellor's order would permit this.

We might observe that when the defendant Sullivan took the oath required by law and was granted letters of administration on this estate, whatever right or title he may have secured in and to this property by purchasing the same advertised by the Internal Improvement Board, necessarily vested in him as administrator of the estate of Senia Morgan. Indeed he was acting as administrator when he acquired the deed to the property, and his letters of administration are not alleged to have been canceled. Having made the oath and having been appointed administrator, it became the duty of Mr. Sullivan, as such administrator, when the property was advertised for sale, to do what he could to secure a deed thereto as administrator of and for the benefit of Senia Morgan's estate. Inasmuch as the appellee had joined in the application for his appointment as administrator, we think she was estopped from complaining of the administrator's action in securing this deed. The answer denies that she had any right or title in or to the property in question, but only the right or opportunity to bid a reasonable sum for it and to purchase it if her bid should be approved by the county judge. In her bill, she did not claim to be a legal heir.

Much as we regret the occasion for it, we cannot pass over without notice another matter in connection with this case. The able and distinguished counsel for the appellee, much to our surprise, in his brief in this case, introduced some seriously disparaging remarks concerning the appellant, Mr. Sullivan, who was sued both as an individual and as administrator, and who, as an attorney represented himself on this appeal, both by brief and oral argument, and who was quite recently honored with the presidency of the society of the bar of the First Judicial Circuit, with headquarters at Pensa-

cola,—a bar which has a fine and noble history and traditions. Two of its members have within the past twenty five years been elected to the presidency of the American Bar Association. Surely counsel for appellee did not intend for this Court, or the appellant, to take his remarks seriously, but if he did so intend we think such statements would constitute an infringement of the rules of this Court adopted on January 27, 1941, relating to "Ethics Governing the Bench and Bar of Florida" and which are set out in full in 145 Fla., beginning at page 763. The particular rules we have in mind are Rules 17 and 18 of the "Ethics Governing Attorneys," 145 Fla. 785.

The above rules constitute paragraphs 17 and 18 of the Canons of Professional Ethics adopted by the American Bar Association in 1908, and are substantially the same as the corresponding sections of the Code of Ethics adopted by the Alabama Bar Association in 1887 which code was incorporated practically unchanged in the Canons of Ethics of the American Bar Association. Those portions of appellee's brief above referred to will be regarded as stricken from the record.

For the reasons hereinabove pointed out, the decree of the court below is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CHAPMAN, C. J., BUFORD, THOMAS and SEBRING, JJ., concur.